IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| DOUGLAS TORRENS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:19-cv-00434 |
| ) | Judge Richardson/Frensley |
| BONNIE JACKS, et al., ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION AND BACKGROUND

Plaintiff Douglas Torrens ("Mr. Torrens") filed this pro se action pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, that Defendants Bonnie Jacks ("Ms. Jacks") (nurse at the Humphreys County Jail where Mr. Torrens was previously incarcerated) and Southern Health Partners, Inc. ("SHP") violated his right to medical treatment when Ms. Jacks ignored his injury and denied him medical treatment, Docket No. 1, p. 4. Mr. Torrens alleges that: (1) his wrist was broken prior to his incarceration; (2) during his intake physical, he informed Ms. Jacks of his injury; (3) Ms. Jacks ordered x-rays, and verified the injury, but offered no treatment; (4) Ms. Jacks told him that she would send him out for treatment if he had money or insurance to pay the costs, but that the jail would not pay for it; (5) Mr. Torrens filed grievances with the jail but no one followed up with him to assure he got treatment for his injury; and (6) he never received any treatment for his injury, which has worsened due to lack of treatment. *Id*. at 4-5. Mr. Torrens is seeking injunctive relief to have his wrist examined and punitive damages against Defendants. *Id*. at 5.

Pending before the Court is a Motion for Summary Judgment, filed by Ms. Jacks and SHP. Docket No. 22. Along with their Motion, Defendants have filed a supporting Memorandum of Law, a Concise Statement of Undisputed Material Facts, the Declaration of Bonnie Jacks, LPN,

the Declaration of Barry T. Dority, APRN, and the Declaration of Jail Administrator, Angie E. Lemons. Docket Nos. 23, 22-1, 22-2, 22-3, 22-4. For the reasons discussed below, the undersigned finds that Mr. Torrens failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act and failed to meet his burden of establishing the elements of a First Amendment retaliation claim. The undersigned therefore recommends that the Motion for Summary Judgment (Docket No. 22) be **GRANTED**.

Defendants argue that they are entitled to summary judgement because: (1) Mr. Torrens has failed to exhaust his administrative remedies before filing suit; (2) there is no evidence that the alleged constitutional violation was caused by the execution of a corporate custom or policy; (3) the claim against Ms. Jacks is redundant because she is sued only in her official capacity as an employee of SHP; (4) there is no evidence of deliberate indifference to a serious medical need; and (5) Mr. Torrens' request for injunctive relief is moot because has been transferred to a different facility. Docket No. 22, p. 1-2.

Mr. Torrens filed a response to Defendants' Motion for Summary Judgement. Docket No. 28. First, Mr. Torrens argues that he has not failed to exhaust his administrative remedies because he filed three separate grievances regarding the incident that resulted in his lawsuit. *Id*. at 2. He asserts that all three grievances were filed with the jail administrator and rendered in his favor thus he did not need to appeal to the Sheriff. *Id*. Mr. Torrens asserts that, though his three grievances were rendered in his favor, the requests were ignored by Defendants. *Id*. Mr. Torrens further asserts that the Prison Litigation and Reform Act ("PLRA") does not require an inmate to file an appeal to a grievance and thus he did not violate it by not filing any appeals. *Id.* at 3. Second, Mr. Torrens admits that he has failed to show that his allegations constituted a violated from a custom or policy of SHP, but that he has only been unable to do so because he has not had access to the SHP contract

2

with the Jail. *Id.* at 4. Third, Mr. Torrens argues that whether or not the suit against Ms. Jacks is redundant is a matter that "should be left for another day" after determining whether or not she violated a policy of SHP. *Id.* Fourth, Mr. Torrens argues that his claim does not fail for lack of evidence that Defendants were indifferent to a serious medical need because Defendants' own records show that he had two fractures and was in pain, yet no treatment was ordered. *Id.* at 4-7. Finally, Mr. Torrens admits that injunctive relief is probably moot but asserts that punitive relief is not. *Id.* at 8.

Mr. Torrens has not responded to Concise Statement of Undisputed Material Facts, Declaration of Bonnie Jacks, LPN, Declaration of Barry Dority, APRN, or Declaration of Jail Administrator.

## II.  UNDISPUTED FACTS[1]

Bonnie Jacks, LPN ("Ms. Jacks") has been employed by SHP as the Medical Team Administrator ("MTA") at the Humphreys County Jail (the "Jail") since August of 2016. Docket No. 22-1, & 1. At all times relevant to this lawsuit, Barry Dority, APRN ("Mr. Dority"), was the Medical Director/Provider for SHP in the Jail. *Id*. at & 2. Health care in the Jail is provided under the direction of an MTA as well as a Medical Director/Provider. *Id*. at & 3. At all time relevant to this lawsuit, Ms. Jacks was the MTA and Mr. Dority was the Medical Director/Provider. *Id*.

When an inmate in the Jail requires medical care, they may submit an inquiry through the Jail kiosk system or through a paper Inmate Sick Call Slip from the corrections officer on duty in the housing unit, which is provided by correctional staff to the Jail medical office. *Id*. at & 4. Ms. Jacks reviews all sick call requests and responds in writing, a copy of which is provided to the

---

[1] These undisputed facts are taken from Defendants' Concise Statement of Undisputed Facts. Docket No. 22-1. As previously noted, Mr. Torrens did not respond to Defendants' Concise Statement of Undisputed Facts.

3

inmate through the kiosk or the corrections staff. *Id*. Routine sick calls are conducted by medical staff inside the housing unit. *Id*.

Ms. Jacks is authorized to provide medical treatment to inmates according to established treatment protocols and to administer medication by implementing standing orders under the direction of Mr. Dority, who is available to Ms. Jacks at all times for consultation. *Id*. at & 5. If a patient requests to be seen by a doctor, Ms. Jacks places the patient on the Provider list and sets aside the patient's chart for Mr. Dority to review on his next visit to the jail. *Id*. Mr. Dority determines which patients need to be seen and will see those patients in the Jail medical office. *Id*. If any changes need to be made to an inmate's medical treatment, Mr. Dority will enter appropriate medical orders at that time, and Ms. Jacks will then implement those medical orders. *Id*. If Mr. Dority issues orders for specialized medical treatment or for referral to an outside specialist or provider, Ms. Jacks implements those orders as well. *Id*.

Ms. Jacks has reviewed Mr. Torrens medical chart. *Id*. at & 6. Mr. Torrens was booked into the Jail on October 30, 2018 and was seen by Ms. Jacks for a physical examination on November 1, 2018. *Id*. at & 7-8. Mr. Torrens was wearing a brace on his left wrist, and informed Ms. Jacks that he had injured his wrist prior to his arrest and was experiencing pain with movement and could not pick up anything or turn his wrist. *Id*. at & 9, 13. Mr. Torrens was permitted to continue wearing his wrist brace while he was in the Jail. *Id*. at & 10. The same day as Mr. Torrens examination, November 1, 2018, Ms. Jacks arranged for x-rays of Plaintiff's left wrist pursuant to medical orders from Mr. Dority. *Id*. at & 11. The reporting radiologist, Nicolaus Keuhn, MD/LE, reported that Mr. Torrens wrist showed no acute fracture or dislocation, noting that the osseous structures appeared intact, joint spaces were preserved, and soft tissues were unremarkable. *Id*. at & 12.

On November 16, 2018, repeat x-rays of Mr. Torrens' left wrist were performed. *Id*. at &

14. Radiologist David Nguyen, D.O. reported that the x-rays showed an incompletely healed distal radius fracture and non-displaced ulnar styloid fracture with, no new fractures. *Id*. He noted that the fractures appeared unchanged and were similar to the x-rays of November 1, 2018. *Id*.

On December 15, 2018, Mr. Dority saw Mr. Torrens in the Jail medical office. *Id*. at & 15. Mr. Torrens asked if he would be charged for the visit, and Mr. Dority replied that he did not know whether or not Mr. Torrens would be charged. *Id*. Mr. Torrens asked if Mr. Dority knew why he was being seen and Mr. Dority affirmed that he did. *Id.* Mr. Torrens stated, "Well, this is a follow up. I should not be charged." *Id.* Mr. Dority replied, "How can this be a follow up if I have never seen you?" *Id.* Plaintiff stated, "I guess we are done," and walked out of the medical office without being examined. *Id.* Mr. Torrens filed this complaint about five months later on May 22, 2019. *Id*. at & 23; Docket No. 1.

On October 19. 2019, Mr. Torrens submitted a medical request through the Jail kiosk, stating: "Tripped over a man sleeping on the floor [and] landed on my left hand[.] [It] feels like I rebroke the wrist [you] didn't treat the last time it was broke[n.] [It] keeps popping at that wrist knuckle[-]like joint[.] [I] need it checked." *Id*. at & 24. The following day, on October 20, 2019, Mr. Torrens submitted another medical request through the jail kiosk, stating:

> "It possible it isn't broken[.] [I]t keeps popping right in front of that wrist knuckle, like at the joint maybe[.] I have no idea what that looks like inside there, other than a rudimentary observation from the few skeletons I may have seen throughout my life and I have no idea where exactly it was broken in the first place, so it would be erroneous for me to speculate[.] [I]t's never stopped hurting and it's never felt right and it hurt pretty good on the few occasions I did some pushups, but this is kinda [*sic*] different with the popping and subsequent sharp pain so I don't know[.] [I'm] sorry they called [you] last night[.] I just wanted them to know[.] [T]hank you."

*Id*. at & 25.

On the same day as his second medical request, October 20, 2019, Mr. Torrens was seen

5

by Mr. Dority, reporting that he had tripped over a mattress and caught his fall with his right wrist and hand. *Id*. at & 26. Mr. Torrens told Mr. Dority that his left wrist was painful and popped when he moved it. *Id*. Mr. Dority noted that Mr. Torrens was wearing a split on his left wrist and that he was able to flex the dorsal aspect of the wrist, could extend his left elbow, and could perform lateral movements with moderate discomfort. *Id*. at & 27. Mr. Dority observed no crepitus during the range of motion assessment and normal grip strength in the left hand. *Id*. Mr. Torrens was offered ibuprofen for the wrist but refused it. *Id*.

On the same day, October 20, 2019, pursuant to the medical orders from Mr. Dority, x-rays were performed on Mr. Torrens' left wrist. *Id*. at & 28. The radiologist, Constantina Lampropoulos, M.D., reported that there was interval healing of the distal radius compared to the x-rays of November 16, 2018 and noted: "There is soft tissue swelling. There are no significant degenerative changes. There is no bone abnormality to suggest a fracture or dislocation. Conclusion: Unremarkable wrist." *Id.* On or about October 20, 2019, Ms. Jacks provided Mr. Torrens with an ACE wrap for his wrist pain. *Id*. at & 29. Mr. Torrens was transferred from the Jail to another correctional facility on October 25, 2019. *Id*. at & 30.

During all times pertinent to this lawsuit, Plaintiff received medical treatment for every medical condition for which he submitted a request. *Id*. at & 31. Nurses at the Jail are not authorized to prescribe medications; all medications provided to Mr. Torrens by Ms. Jacks were prescribed by Mr. Dority. *Id*. at & 32. Mr. Dority's prescribing and dosage instructions were followed by Ms. Jacks, who provided Mr. Torrens with all of the medication and treatment Mr. Dority ordered. *Id*. at & 33. Nurses at the Jail are not authorized to refer an inmate to an outside treatment provider without medical orders from the Medical Director/Provider. *Id*. at & 34. Mr. Dority did not issue medical orders for Ms. Jacks to refer Mr. Torrens to an outside medical treatment provider for his

wrist complaints because in Mr. Dority's professional medical opinion, based upon his physical examination and assessment, as well as the diagnostic imaging, referral to an outside medical treatment provider was not medically necessary. *Id*. at & 35.

Based upon their education, training and experience, as well as their personal examination and treatment of Mr. Torrens, it is the opinion of Ms. Jacks and Mr. Dority that Mr. Torrens received prompt and appropriate medical treatment for all of his medical complaints and conditions, and all of his medical attention has been within the applicable standard of care. *Id*. at & 36. It is also their opinion that no act or failure to act by Ms. Jacks or any member of the medical staff proximately caused any injury to Mr. Torrens. *Id*. On no occasion was Mr. Torrens ever at risk of serious harm, nor was Ms. Jacks or any member of the SHP medical staff ever indifferent to any complaint that he made. *Id*.

Angie E. Lemons ("Ms. Lemons") is the Jail Administrator and handles the day-to-day operations of the Jail. *Id*. at & 37. As a part of the inmate management system at the Jail, an interactive digital system known as the Tennessee Commissary Management System ("System") is utilized, which provides kiosk terminals in the Jail cells which inmates can access. *Id*. at & 39. On the System is the Jail Inmate Handbook ("Inmate Handbook") which sets forth institutional rules to govern inmate information conduct and discipline. *Id*.

The Handbook sets forth an inmate's ability to grieve any complaint during his or her incarceration in the Jail by a procedure of submitting his or her complaint to the Jail Administrator for disposition and then to the Sheriff, who makes the final decision. *Id*. at & 41. Medically related complaints or requests are directed through the System to Ms. Jacks, who responds to the complaints or requests for medical attention, while any other type of complaint or grievance are directed to Ms. Lemons. *Id*. at & 42. All requests, complaints, and grievances are reviewed by Ms.

7

Lemons and are answered through the System. *Id.* at & 43. If an inmate wishes to appeal a response to a request, complaint, or grievance, the inmate can submit a request for review of appeal to the Sheriff through the System. *Id.* After an inmate submits an appeal, the Sheriff will respond to the inmate with an explanation of his findings and conclusions and whether the appeal has been approved or denied. *Id.* at & 44. All decisions reached and actions taken by the Sheriff are the final authority in the complaint or grievance mechanism. *Id.*

Mr. Torrens was booked into the Jail on October 30, 2018, at 1:11 A.M. *Id.* at & 38. The following day, on October 31, 2018 at 12:37 P.M., Mr. Torrens logged onto the System and entered his acknowledgement of his access to the Handbook. *Id.* at & 40. There is no record of Mr. Torrens submitting any appeal of a denial of a request, complaint, or grievance to the Sheriff while in the Jail. *Id.* at & 46.

### III. LAW AND ANALYSIS

#### A. Local Rules 7.01(a)(3) and 56.01(a), (b), (c), and (f)

Local Rule 7.01(a)(3) states:

> **3. Response.** Except for motions for reconsideration (to which no response shall be filed unless ordered by the Court), any party opposing a motion must serve and file a memorandum of law in response, and, if necessary to support assertions of fact, affidavits and depositions, not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. The response shall not exceed twenty-five (25) pages without leave of Court. If a timely response is not filed, the motion shall be deemed to be unopposed, except for motions to reconsider for which no response shall be permitted unless ordered by the Court.

Defendants filed the instant Motion on August 11, 2020. Docket No. 22. Mr. Torrens responded to the motion on September 25, 2020. Docket 28.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules

56.01(a), (b), (c), and (f) state, in pertinent part:

> **a. Time for Response.** Motions for summary judgment pursuant to Fed. R. Civ. P. 56 must be in accordance with that Rule except that the party opposing the motion shall have twenty-one (21) days after service of the motion in which to serve a response, unless otherwise ordered by the Court.
>
> **b. Statement of Undisputed Material Facts.** In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Fed. R. Civ. P. 56 must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact must be set forth in a separate, numbered paragraph. Each fact must be supported by a specific citation to the record. . . .
>
> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ... In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.
>
> . . .
>
> **f. Failure to Respond.** If a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.

Mr. Torrens has failed to respond to Defendants' Concise Statement of Undisputed Material Facts, Declaration of Bonnie Jacks, LPN, Declaration of Barry Dority, APRN, or Declaration of Jail Administrator. Pursuant to Local Rule 56.01(f), Mr. Torrens' failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Ms. Jacks is entitled to a judgment as a matter of law.

### B. Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only Aif the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

10

### C. Official Capacity Claims

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and the "plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Suing employees in their official capacities is the equivalent of suing their employer. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994*); Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990).

Where an employer remains as a target of this action through Plaintiff's official-capacity claim against Defendant employees, a Plaintiff's claims against other employees in their official capacities are redundant. *Foster v. Michigan*, 573 Fed. Appx. 377, 390 (6th Cir. 2014); *Faith Baptist Church v. Waterford Twp.*, 522 Fed. Appx. 322, 327 (6th Circ. 2013) (finding that because plaintiff sued [individual defendant's employer], the entity for which [individual defendant] was an agent, "the suit against [individual defendant] in his official capacity was superfluous."); *see also Von Herbert v. City of St. Clair Shores*, 61 Fed. Appx. 133, 140 n.4 (6th Cir. 2003) (finding that a plaintiff's "official-capacity federal claims against [individual defendants] were redundant, because they were subsumed by her [Section] 1983 charge against" their employer).

### D. 42 U.S.C. § 1983

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

11

> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress. . ..

Thus, in order to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### E. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F. 3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F. 3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F. 3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall
> be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of §1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F. 3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether the plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. §1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. §1997e(a) in *Freeman v. Francis*, 196 F. 3d 641 (6th Cir. 1999). In *Freeman*, the plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court dismissed his complaint for failure to exhaust administrative remedies. On appeal, the plaintiff argued that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of §1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in §1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term 'prison conditions' as used in 18 U.S.C. §3626(g)(2), which was amended as part of the same legislation as §1997e, does include claims such as excessive force because it expressly includes "effects of actions [by] government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .

13

> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F. 3d at 643-644 (footnote and internal citation omitted).

The U. S. Supreme Court has also held that "§1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S. Ct. at 988, 992 (citations omitted).

### F. Eighth Amendment Violation Claim

The governing standard for an Eighth Amendment violation is "deliberate indifference to an inmate's serious medical need." *North v. Cuyahoga Cty.*, 754 F. App'x 380, 384 (6th Cir. 2018);

14

*see also Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). An inmate can bring suit under § 1983 for an Eighth Amendment violation "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted). Deliberate indifference requires proof that: (1) the inmate had a sufficiently serious medical need; and (2) a municipal actor knew of and disregarded an excessive risk to the inmate's health or safety. *North*, 754 Fed. App'x. at 835; *see also Winkler v. Madison Cty.*, 893 F.3d 877, 890-91 (6th Cir. 2018). Thus, the deliberate indifference standard has both objective and subjective components. *Id.*

The objective component "requires that the inmate have a sufficiently serious medical need such that she is incarcerated under conditions posing a substantial risk of serious harm." *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citation and internal quotation marks omitted). A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th. Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

To satisfy the subjective component, a plaintiff must show that officials had a "sufficiently culpable state of mind," namely "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations and internal quotation marks omitted). "Deliberate indifference is greater than negligence but does not require proof that the officials intended to cause harm." *North*, 754 Fed. App'x. at 385; *See also Shadrick v. Hopkins Cty.*, 805 F.3d 724, 737 (6th Cir. 2015). "Acting or failing to act 'with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id.* at 737-38 (quoting *Farmer*, 511 U.S. at

15

836). The plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Phillips v. Roane County*, 534 F.3d 531, 540 (6th Cir. 2008) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Recognizing that officials "do not readily admit this subjective component," courts may "infer from circumstantial evidence that a prison official had the requisite knowledge." *Id.* (citation omitted). The "very fact that the risk was obvious" may permit a factfinder to conclude that an official was aware of it, *Farmer*, 511 U.S. at 842, and a defendant's denial of knowledge is not dispositive, *see Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005). Plaintiffs are not required to prove that the defendant was aware of the exact nature or consequences of the defendant's action or failure to act; demonstrating that the defendant was aware of the plaintiff's condition and knew that "serious risks accompany" it is sufficient. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). An official's failure to follow applicable policies and protocols can be persuasive evidence of deliberate indifference in the Eighth Amendment context. *See Phillips*, 534 F.3d at 541.

### G. Claims Against Ms. Jacks in Her Official Capacity

The claims against Ms. Jacks are redundant and should be dismissed. Where an entity is named as a defendant, an official capacity claim against its individual employees is redundant and such claims should therefore be dismissed. *Foster*, 573 Fed. Appx. At 390; *Faith Baptist Church*, 522 Fed. Appx. At 327; *Von Herbert*, 61 Fed. Appx. at 140 n.4. Mr. Torrens has filed a complaint against Ms. Jacks in her official capacity and her employer, SHP. Accordingly, the claims against Ms. Jacks in her official capacity should be dismissed.

16

Case 3:19-cv-00434   Document 32   Filed 01/11/21   Page 16 of 19 PageID #: 295

### H. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Mr. Torrens' claims fall within the meaning of the term "prison conditions" as used in §1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that, prior to filing the instant action, Mr. Torrens did not submit any appeals of grievances with respect to his inadequate medical treatment. Docket No. 22-1, at & 46. Thus, it is further undisputed that Mr. Torrens did not exhaust his administrative remedies with regard to his claims against Defendants. *See id.* Mr. Torrens mistakenly believes that he is not required to file an appeal to exhaust his administrative remedies. Docket No. 28, p. 2-3. However, as stated above, the filing of an initial grievance is insufficient to satisfy the requirements of the PLRA, and a prisoner must pursue his grievance through the final level of administrative appeal. *Hartsfield*, 199 F.3d at 306. Because Mr. Torrens has failed to exhaust his administrative remedies as required by the PLRA, Defendants are entitled to a judgment as a matter of law.

Additionally, Mr. Torrens has not set forth a prima facie case of a violation of his Eighth Amendment Right to Adequate Medical Treatment. In order to set forth an Eighth Amendment violation claim, Mr. Torrens must establish that: (1) he had a sufficiently serious medical need; and (2) that a municipal actor knew of and disregarded an excessive risk to the inmate's health or safety. *North*, 754 Fed. App'x. at 385; *see also Winkler*, 893 F.3d at 890-91. As an initial matter, Mr. Torrens has failed to show that he had a sufficiently serious medical need. It is undisputed that Mr. Torrens' wrist was not seriously injured. Docket No. 22-1, at && 14, 27, 28. Therefore, Mr. Torrens fails to satisfy the first element. Because Mr. Torrens has failed to show that there was an excessive risk to his health or safety that any municipal actor could disregard, he has also failed to satisfy the second element. Mr. Torrens fails to demonstrate the elements of an Eighth Amendment

violation claim and thus fails to establish a prima facie case of an Eighth Amendment violation claim.

There is no evidence that Ms. Jacks or SHP disregarded an excessive risk to Mr. Torrens' health or safety. The undisputed evidence shows that Ms. Jacks provided medical attention for every medical concern that Mr. Torrens brought to her attention. Mr. Jacks has ordered multiple x-rays of his wrist, prescribed ibuprofen for his wrist pain, and permitted him to keep his wrist brace. The x-rays did not show that Mr. Torrens had a serious injury, and the medical opinion of Mr. Dority was that a referral to a specialist was not medically necessary. Mr. Torrens has failed to demonstrate that he has suffered any detrimental effects due to Defendants' failure to refer him to an orthopedic specialist. Disagreeing with a patient about proper treatment does not amount to disregard of an excessive risk to the patient's health.

The Eighth Amendment guarantees adequate medical treatment, not the medical treatment of the inmate's choice; an inmate's desire for additional or different treatment does not state a cause of action for deliberate indifference under the Eighth Amendment. *Estelle*, 429 U.S. at 106-107. Plaintiff's disagreement with the medical treatment he received during his incarceration does not mean that either SHP or its employees were deliberately indifferent to Plaintiff's serious medical needs; to the contrary, the record establishes that SHP and its employees were responsive and provided adequate medical care. Accordingly, Plaintiff cannot establish the requisite underlying constitutional violation. Absent the requisite underlying constitutional violation, Plaintiff cannot sustain his § 1983 claims and Defendants are entitled to a judgment as a matter of law.

In light of the foregoing, even if Mr. Torrens had exhausted his administrative remedies, the undisputed facts establish that Defendants did not disregard a serious medical need; Defendants

18

Case 3:19-cv-00434   Document 32   Filed 01/11/21   Page 18 of 19 PageID #: 297

are therefore entitled to a judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds that Mr. Torrens failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act and failed to establish the elements of an Eighth Amendment violation claim. The undersigned therefore recommends that the Defendants' Motion for Summary Judgment (Docket No. 22) be **GRANTED** and the claims be **DISMISSED WITH PREJUDICE**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**